IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

IN RE:        RUSSELL THOMAS EVANS,                    Case No. 13-36105-KRH
                                                       Chapter 7

                     Debtor.

_____

ROY M. TERRY, TRUSTEE,

             Plaintiff,

v.                                                     Adv. Pro. 14-03097-KRH

WENDY TAYLOR EVANS and
RUSSELL THOMAS EVANS,

             Defendants.

_____


**MEMORANDUM OPINION**

Russell Thomas Evans (the "Debtor") filed a voluntary bankruptcy petition in this Court

under Chapter 7 of the Bankruptcy Code[1] on November 8, 2013 (the "Petition Date"). Roy M.

Terry, Jr. (the "Trustee"), is the duly appointed and acting Chapter 7 Trustee for the Debtor's

bankruptcy estate. On June 12, 2014, the Trustee commenced this adversary proceeding by

filing a complaint (the "Complaint") against Wendy Taylor Evans ("Ms. Evans") and against the

Debtor, who is the former husband of Ms. Evans (Ms. Evans and the Debtor are hereinafter

jointly referred to as the "Defendants").[2] In the Complaint, the Trustee seeks authority to sell the

parcel of real property located at 21212 Warrior Drive, Chesterfield, Virginia (the "Real

_____

[1] All references to the Bankruptcy Code are to the Bankruptcy Code as codified at 11 U.S.C. §§ 101 *et seq*.

[2] Bank of America, N.A., which holds a valid first priority deed of trust lien on the Defendants' Real Property, and
PRLAP, Inc., in its capacity as trustee under the deed of trust encumbering the Defendants' Real Property
(collectively the "BANA Defendants") were also included as named defendants in the Trustee's Complaint. The
BANA Defendants were dismissed from the proceeding without prejudice by a consent order entered November 20,
2014.

Property") in accordance with Bankruptcy Code § 363(h).  The Real Property served as the

Defendants' martial residence prior to their divorce in 2011.  The Trustee also seeks to recover

contribution from Ms. Evans based on her actual possession of the entirety of the Real Property

since the Defendants divorced on June 1, 2011.

The Court conducted a trial on the Complaint on February 18, 2015.  At the conclusion of

the evidence submitted at trial, the Court ordered supplemental briefing and took the matter

under advisement.  Counsel for Ms. Evans submitted his memorandum of law on March 4, 2015.

The Trustee filed his responsive brief on March 9, 2105.  After examination of the applicable

statutory authority, case law, pleadings, evidence, and arguments presented at trial, the Court

finds that: (i) the Debtor held a one-half ownership interest in the Real Property as of the Petition

Date; (ii) the Trustee has the right to administer the Debtor's interest in the Real Property, as that

interest became property of the Chapter 7 bankruptcy estate pursuant to Bankruptcy Code

§ 541(a)(1); (iii) neither Ms. Evans nor the Debtor was entitled to contribution from the other as

of the Petition Date; and (iv) the Chapter 7 Trustee has satisfied all the requirements of

Bankruptcy Code § 363(h) and, accordingly, is entitled to sell the Defendants' undivided interest

in the Real Property.  This memorandum opinion sets forth the Court's findings of fact and

conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules").[3]

### Jurisdiction and Venue

The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28

U.S.C. §§ 157 and 1334 and the General Order of Reference from the United States District

Court for the Eastern District of Virginia dated August 15, 1984.  This is a core proceeding under

---

[3]  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of
fact when appropriate.  *See* Fed R. Bankr. P. 7052.

28 U.S.C. § 157 in which final orders or judgments may be entered by a bankruptcy judge.[4]

Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Factual and Procedural Background

This adversary proceeding was filed in connection with and developed out of the

Debtor's bankruptcy case.  The Debtor had become seized with fee simple title to the Real

Property on March 31, 1992.  The Defendants married a month later in the City of Petersburg,

Virginia.  The Debtor remained as the sole owner of the Real Property throughout the marriage.

On October 24, 2003, the Defendants executed a promissory note payable to the order of Bank of

America, N.A. in the original principal amount of $47,113.80 (the "Bank of America Note").  On

the same date, the Defendants also executed a deed of trust encumbering the Real Property (the

"Deed of Trust") as security for the Bank of America Note.  The Deed of Trust was duly

recorded among the land records maintained in the Clerk's Office of the Circuit Court of the

County of Chesterfield, Virginia (the "Chesterfield Clerk's Office").  The Debtor's Amended

Schedule D lists the balance due under the Deed of Trust as of the Petition Date as $20,116.[5]

On March 2, 2011, the Defendants entered into a Separation Agreement (the "Property

Settlement Agreement").  On June 1, 2011, the Circuit Court for the City of Petersburg, Virginia

entered a Final Decree of Divorce (the "Divorce Decree").  The Divorce Decree incorporated by

---

[4]  This adversary proceeding has a storied procedural history.  None of the defendants named in the Complaint timely filed a responsive pleading in accordance with the Bankruptcy Rules after the Complaint had been duly served upon them.  Only after the Trustee moved for the entry of default judgment under Federal Rule 7055 on October 1, 2014, did Ms. Evans and the BANA Defendants file any objection.  The Court denied the Trustee's motion for default judgment against Ms. Evans and granted Ms. Evans leave to file a late answer to the Complaint. On October 23, 2014, Ms. Evans filed her Answer to the Complaint in which she admits that this is a core proceeding.  The Court conducted a pretrial conference on November 5, 2014.  The Court entered a pretrial order and an order dismissing the BANA Defendants on November 20, 2014.  The Pretrial Order provided that, if no objection was filed within 30 days of its entry, then the parties would be deemed to have consented to the entry of a final order in the adversary proceeding by a bankruptcy judge.  No such objection was received from any party.

[5]  Bank of America, N.A. filed a Stipulation of Fact along with the Defendants and the Trustee on November 19, 2014, as a predicate to the entry of the consent order dismissing the BANA Defendants as parties to the adversary proceeding.  Attached to the Stipulation of Fact was a loan payoff statement confirming an outstanding balance of $14,118.20 on the Bank of America Note as of November 17, 2014.

reference the Property Settlement Agreement.  Interpretation of two provisions in the Property

Settlement Agreement form the crux of this adversary proceeding:

**Marital Property:**

(1)    . . . .

(2)    The parties jointly own the home located at **21212 Warrior Drive, in the County of Chesterfield, Virginia,** as their martial residence.  Husband agrees to transfer his interest in the real property to the Wife simultaneously with Wife refinancing any and all loans that are currently encumbering the title to the property created by Husband and Wife whereby Husband is jointly liable or severally liable on the underlying obligations.  From the refinancing of the loans on the property, Husband upon his execution of a Deed transferring all of his interest in said real property to the Wife, shall receive in return the sum of **Fourteen Thousand Dollars ($14,000) cash or the equivalent..** [sic]

**Time is of the Essence** in that if Wife fails to refinance said obligations and remove Husband from any and all liabilities created by such obligations and secured by Deeds of Trust encumbering the property, by **January 2, 2012,** Wife **shall forfeit** to the Husband any interest that she may have acquired by virtue of her timely refinancing such obligations, and Husband shall be deemed to own a one-half (1/2) undivided interest in the property, and Wife shall not be entitled to any reimbursement, contribution or credit for any payments she may have made on the obligations nor for any maintenance or improvements so made on the property up to January 2, 2012.

Wife shall be entitled to exclusive possession of the real property so long as she pays all known charges relative to the ownership of the property, including, but not limited to: all mortgages/deeds of trust, all real estate taxes, special assessments, all items of maintenance of the property, and provided that Wife *timely* refinances the current loans secured by liens on the titles to the property.  Wife expressly agrees to *save harmless* the Husband from any call of the aforementioned expenses items associated with the ownership of the real property.

On June 27, 2011, Mr. Evans executed a deed transferring his sole ownership interest in the Real

Property to Ms. Evans (the "Deed of Transfer").  The Deed of Transfer recites that it was "made

pursuant to a written property settlement agreement incident to a divorce."  The Deed of Transfer

additionally states:

4

> This conveyance is made ***expressly subject to*** the lien and provisions contained in that certain Deed of Trust, dated October 24, 2003 and recorded on June 29, 2004 in the Circuit Court Clerk's Office of Chesterfield County, Virginia . . . securing a promissory note in the original principal amount of $47,113.80 to Bank of America, N.A.  The said party of the second part joins in this conveyance in order to signify and agree to assume the remaining balance due on the said Note secured by the aforementioned Deed of Trust, and thereby save harmless the party of the first part from any call thereon.

The Deed of Transfer was subsequently recorded in the Chesterfield Clerk's Office on July 6, 2011.  Since June 1, 2011, the date of the Divorce Decree, Ms. Evans has been in exclusive possession of the Real Property.  Ms. Evans did not refinance the obligations secured by the Deed of Trust encumbering the Real Property by January 2, 2012, as required by the Property Settlement Agreement.  Both of the Defendants remain liable on the Bank of America Note.[6]

The Court entered default judgment in favor of the Trustee against the Debtor on November 19, 2014.  Ms. Evans now remains the sole defendant in this adversary proceeding. The Trustee maintains that the Debtor held a one-half ownership interest in the Real Property as of the Petition Date by virtue of Ms. Evans failure to refinance the obligations secured by the Deed of Trust pursuant to the Property Settlement Agreement.

**Analysis**

Bankruptcy Code § 541 provides for the creation of a bankruptcy estate upon the commencement of a bankruptcy case.  The scope of the broad definition set forth in § 541 of the bankruptcy code of property of the bankruptcy estate is both comprehensive and far-reaching. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–05, 103 S.Ct. 2309 (1983).  Property of the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1); *see* 5 *Collier on Bankruptcy* ¶ 541.03 (16th

---

[6]  Ms. Evans acknowledges in the Stipulation of Fact filed by the parties on November 19, 2014, that Bank of America, N.A. never released the Debtor from his obligations under the Bank of America Note.

ed. 2014) ("Pursuant to subsection (a)(1), the estate includes all legal or equitable interests of the debtor in property, wherever located or by whomever held, as of the commencement of the case."). The question of what constitutes property of the estate is a question of federal law. *Bd. of Trade of Chi. v. Johnson*, 264 U.S. 1, 44 S.Ct. 232 (1924); *In re Drexel Burnham Lambert Grp. Inc.*, 120 B.R. 724 (Bankr. S.D.N.Y. 1990). It includes both real and personal property interests of the Debtor. It includes all tangible and intangible interests in property and all causes of action. It applies to all property in the Debtor's possession as well as property held by third parties. It covers property wherever located. Section 541 of the Bankruptcy Code is intended to bring "anything of value that . . . debtors have in the estate." H.R. Rep. 95-595, at 176 (1977). While nonbankruptcy law does not control what constitutes property, bankruptcy courts do look to nonbankruptcy law to determine the nature and extent of the debtor's interest in specific property. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 147 (1979). Accordingly, whatever legal and equitable rights the Debtor had to the Real Property under the Divorce Decree and Property Settlement Agreement vested in the bankruptcy estate as of the commencement of this bankruptcy case.

The Trustee asserts that the Debtor holds a one-half ownership interest in the Real Property based upon a plain reading of the Divorce Decree and Property Settlement Agreement. The Property Settlement Agreement states that in the event that Ms. Evans failed to refinance all obligations secured by the Deed of Trust encumbering the Real Property by January 2, 2012, then Ms. Evans would forfeit "any interest that she may have acquired . . . and Husband shall be deemed to own a one-half (1/2) undivided interest in the property." It is undisputed that Ms. Evans has not refinanced all the obligations secured by the Deed of Trust and that Mr. Evans remains liable on the Bank of America Note.

The Final Decree and Property Settlement Agreement constitute the "final adjudication of the property rights of the parties and cannot be changed by them without the approval of the court." *Higgins v. McFarland*, 196 Va. 889, 895, 86 S.E.2d 168, 172 (1955). The Property Settlement Agreement contemplated that the Debtor would transfer the Real Property to Ms. Evans in exchange for $14,000. The Debtor complied with this provision. Ms. Evans then became sole owner of the Real Property in the stead of the Debtor who had been the sole owner up to that point. Ms. Evans was then entitled to retain sole ownership of the Real Property, provided that she removed the Debtor "from any and all liabilities created by [the] obligations . . . secured by Deeds of Trust encumbering the [Real Property] by January 2, 2012." In the event that she failed to successfully refinance the obligations secured by the Deed of Trust by this date, which is what occurred, then a one-half interest in the Real Property would automatically revert to the Debtor. Based on the plain reading of this language, and absent any legal authority to the contrary, the Final Decree and Property Settlement Agreement, which constitutes the "final adjudication of the property rights of the parties," automatically vested Debtor with a one-half ownership interest in the Real Property. *Id.*

Ms. Evans advances two primary arguments as to why this language does not re-vest the Debtor with an interest in the Real Property. The first is based on novation and accord and satisfaction, and the other is based on the doctrine of merger. Ms. Evans argues that the Debtor agreed to compromise the refinancing requirements set forth in the Divorce Decree and Property Settlement Agreement and that the Deed of Transfer constitutes a novation. Ms. Evans contends that the Deed of Transfer absolutely conveyed all right, title, and interest in the Real Property to her. The Deed of Transfer, she asserts, extinguished any reversionary right the Debtor may have

7

held pursuant to the Divorce Decree and Property Settlement Agreement.  The Court finds that this argument is of no moment.

Federal Rule of Civil Procedure 8(c), which is made applicable to this proceeding under Bankruptcy Rule 7008, provides that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense."  Fed. R. Civ. P. 8(c) (hereinafter the "Civil Rules"). Accord and satisfaction is specifically listed as an affirmative defense in Civil Rule 8(c)(1). Novation is also an affirmative defense.  *See Va. Elec. & Power Co. v. Norfolk S. Ry. Co.*, 278 Va. 444, 456, 683 S.E. 2d 517, 524 (2009) (referring to novation as an affirmative defense); *see also Union Mut. Life Ins. Co. v. Chrysler Corp.*, 793 F.2d 1, 13 (1st Cir. 1986) ("[N]ovation is an affirmative defense.") (internal quotation marks omitted).  "Failure to assert an affirmative defense results in a binding waiver of that defense, if allowing the defense would result in unfair surprise or prejudice."  *Innovative Legal Mktg., LLC v. Mkt. Masters-Legal*, 852 F.Supp.2d 688, 695 (E.D. Va. 2012).  Here, Ms. Evans did not assert any affirmative defenses in her Answer. Nothing in the Answer can be liberally construed as constituting an affirmative defense of any sort.  Counsel for Ms. Evans contends that language contained in the Response to the Trustee's Motion for Entry of Default and Default Judgment put the Trustee on sufficient notice that Ms. Evans was asserting there had been an accord and satisfaction.  The referenced language reads: "[The Defendants] chose this combination of deed, payment and assumption to satisfy the obligation in the Settlement Agreement.  As such, no interest in the house reverted to the Debtor."  The Court finds that this language is insufficient on its face to put the Trustee on notice that Ms. Evans was asserting the affirmative defenses of accord and satisfaction or novation. Allowing Ms. Evans to raise an affirmative defense at trial, despite not having properly plead

8

any affirmative defenses, would "result in unfair surprise or prejudice" to the Trustee. [7]

Therefore, the Court is compelled to reject Ms. Evans' argument that the Deed of Transfer

constitutes an accord and satisfaction or novation because she has waived that affirmative

defense. Fed. R. Civ. P. 8(c); *Innovative Legal Mktg.*, 852 F. Supp.2d at 695.

Even if Ms. Evans had properly plead the affirmative defense of novation, Ms. Evans'

counsel did not present any evidence at trial to meet the requisite evidentiary burden. The Court

entered its standard pretrial order in this adversary proceeding on November 11, 2014. The

Court's pretrial order provides "counsel for Defendant shall file a list of witnesses in accordance

with Rule 7026(a)(3)(A) of the Federal Rules of Bankruptcy Procedure that Defendant intends to

---

[7] Ms. Evans contends that allowing her to raise these affirmative defenses at this stage of the proceeding would not prejudice the Trustee. This argument is based on the assertion that Ms. Evans made the Trustee aware of these defenses in a response to one of the Trustee's interrogatories and that the Trustee's Memorandum filed two days prior to trial addresses novation. The Court is not persuaded by this argument, as raising an affirmative defense in a response to a set of interrogatories is not sufficient to satisfy the pleading requirements of Civil Rule (8)(c). See Fed. R. Civ. Pro. 8(c)(1), which provides that in responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, and Fed. R. Civ. P. (7), which does not list responses to discovery requests as a type of "pleading."

Counsel for Ms. Evans also requests that he be granted leave to amend his Answer under Civil Rule 15(b), as made applicable by Bankruptcy Rule 7015, in order to properly plead affirmative defenses. The Court may only provide leave to amend a responsive pleading under this rule, as is the case under Civil Rule 8(c), if allowing such leave to amend will not prejudice the opposing party. The purpose of this analysis "is simply to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that he or she is prepared to properly litigate it." *Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988) (citing *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350 (1971)). As discussed, nothing in Ms. Evans pleadings could be construed to constitute the assertion of an affirmative defense. While delay, on it's own, is insufficient to deny leave to amend, the "court has discretion to deny leave to amend in the face of extraordinarily long and essentially unexplained delay." *Johnson v. Educ. Testing Serv.*, 754 F.2d 20, 27 (1st Cir. 1985) (quoting *Carter v. Supermarkets Gen. Corp.*, 684 F.2d 187, 192 (1st Cir. 1982) (internal quotation marks omitted). Here, the Defendant has not provided a satisfactory explanation as to why a motion to amend pleadings was not filed until after trial concluded. Additionally, as discussed below, counsel for Ms. Evans failed to file a witness list or list of exhibits. All of this taken together establishes that allowing Ms. Evans' counsel the opportunity to amend pleadings at this point would prejudice the Trustee. As a result of the Defendant's inactions, the Trustee did not have sufficient notice to be "prepared to properly litigate" these issues. Additionally, while the Defendant argues that she should be given leave to amend because the Trustee did not object to the Defendant addressing novation during oral argument, this reasoning is misguided because the Defendant did not present any evidence at trial to which the Trustee could object. Thus, the Defendants' request to amend pleadings under Civil Rule 15 is denied.

9

call at trial not later than 10 days prior to the Trial Date."[8]  Counsel for Ms. Evans failed to file a

witness list prior to trial.  Additionally, the Court's pretrial order also provides that "[o]n or

before 14 days prior to the Trial Date, counsel for the parties shall file with the Clerk a list of

proposed exhibits and the proposed exhibits."  Counsel for Ms. Evans also failed to file an

exhibit list prior to trial.  In Virginia:

> [N]ovation is defined as a mutual agreement among all parties concerned for
> discharge of a valid existing obligation by the substitution of a new valid
> obligation on the part of the debtor or another.  To effect a novation there must be
> a clear and definite intention on the part of all concerned that such is the purpose
> of the agreement, for it is a well settled principle that novation is never to be
> presumed.  To establish novation the proof must be clear and satisfactory.  Its
> essential requisites are a previous valid obligation, the agreement of all parties to
> the new contract, the extinguishment of the old contract, and the validity of the
> new contract.

*Honeywell, Inc. v. Elliot*, 213 Va. 86, 89–90, 189 S.E.2d 331, 334 (1972).  Because Defendant's

counsel did not present any evidence at trial, Ms. Evans has not provided the Court with "clear

and satisfactory" proof that a novation exists.

The evidence presented by the Trustee, on the other hand, suggests the opposite.  Ms.

Evans had no ownership interest in the Real Property prior to the conveyance under the Deed of

Transfer.  It would have been difficult for Ms. Evans to re-negotiate financing on property she

did not own.  It made sense that the Real Property would be conveyed to her ahead of time in

order to allow Ms. Evans the opportunity to refinance the obligations secured by the Deed of

Trust.  The transaction is entirely consistent with the language contained in the Property

Settlement Agreement that provided for a one-half ownership interest to re-vest in the Debtor if

the anticipated refinancing did not timely occur.  No such re-vesting would have been necessary

if the parties had not contemplated effecting the Deed of Transfer prior to the refinancing.

---

[8]  Bankruptcy Rule 7026(a)(3) requires that this information be filed 30 days before trial unless the Court orders
otherwise.

10

Accordingly, the Court makes a factual finding that there was no accord and satisfaction or novation.

Ms. Evans also argues that the doctrine of merger is applicable to the Deed of Transfer. The merger doctrine provides "in the case of the sale of real property, the deed of conveyance represents the final agreement of the parties and all prior agreements, oral or written, are merged into the deed of conveyance." *Empire Mgmt. & Dev. Co., Inc. v. Greenville Assocs.*, 255 Va. 49, 52, 496 S.E.2d 440, 442 (1998). "The merger doctrine deals with extinguishing a previous contract by an instrument of higher dignity." *Id.* (citing *Miller v. Reynolds*, 216 Va. 852, 855, 223 S.E.2d 883, 885 (1976)). The merger doctrine contemplates that the parties to a land sale contract may, prior to delivery of the deed, "alter certain elements of the transaction, and that those alterations may be reflected in the deed. The deed, therefore, memorializes the final agreement of the parties, 'and all prior agreements, oral or written, are merged into the deed of conveyance.'" *In re Tribby*, 241 B.R. 380, 382–83 (Bankr. E.D. Va. 1999) (quoting *Empire Mgmt.*, 255 Va. at 52, 496 S.E.2d at 442) (internal footnote omitted).

Ms. Evans maintains that the Deed of Transfer constitutes the final agreement of the parties. She contends that the Final Decree and Property Settlement Agreement are merged into and extinguished by the Deed of Transfer. Virginia law does not support this result. Virginia Code section 20-109.1 provides that once a property settlement agreement is incorporated into a final divorce decree, "such agreement or provision thereof . . . shall be deemed for all purposes to be a term of the decree, and enforceable in the same manner as any provision of such decree." Va. Code Ann. § 20-109.1. The purpose of this provision "is to facilitate enforcement of the terms of an incorporated agreement by the contempt power of the court." *Morris v. Morris*, 216 Va. 457, 459, 219 S.E.2d 864, 866–67 (1975). The Defendants' Property Settlement Agreement,

11

which the Divorce Decree incorporates by reference, is "enforceable in the same manner as any provision of [the divorce] decree." Va. Code Ann. § 20-109.1. The Deed of Transfer is not an instrument of higher dignity than the Court's Divorce Decree. "Judgments and decrees are contracts of the highest order and especially is this so when entered by consent of the parties." *Higgins v. McFarland*, 196 Va. at 896, 86 S.E.2d at 172. The merger doctrine is inapplicable. As an incorporated component of the Divorce Decree, the Property Settlement Agreement remains in full force and effect following the execution of the Deed of Transfer.[9] The Court finds that pursuant to the Defendants' Divorce Decree and Property Settlement Agreement, Mr. Evans holds a one-half ownership interest in the Real Property.

The Court must address next whether the Chapter 7 Trustee is entitled to recover contribution from Ms. Evans for her sole possession and use of the Real Property after January 2, 2012. The Trustee contends that Ms. Evans owes contribution for one-half of the fair market rental value of the property dating back to the time she failed to refinance all obligations secured by the Deed of Trust. The Trustee maintains that the Defendants became tenants in common as a result of the Divorce Decree and that Ms. Evans had exclusive possession of the Real Property since that time.

Virginia Code section 8.01-31 provides: "An accounting in equity may be had against any fiduciary or by one joint tenant, tenant in common, or coparcener for receiving more than comes to his just share or proportion, or against the personal representative of any such party." Va. Code Ann. § 8.01-31. The Court finds that the facts of the case establish that Ms. Evans has not received more than her "just share or proportion" through her exclusive possession of the Real Property. Since January 2, 2012, it is uncontested that Ms. Evan has made all mortgage

---

[9] Additionally, the Deed of Transfer, by its own terms, states that the deed was "made pursuant to [the] written property settlement agreement incident to a divorce."

payments, paid all property taxes, and has been otherwise exclusively responsible for upkeep and maintenance of the property.[10]  The Trustee contends that he is entitled to recover one-half of the monthly rental value of the house beginning on January 2, 2012.  The Trustee advances this claim despite the fact that the Debtor at no point after he vacated the premises made any attempt to assert any possessory rights to the Real Property.  It would lead to an inequitable result if the Trustee were now permitted to recover contribution for past rent, despite the fact that at no point did the Debtor ever demand rent or assert a right to possess his share of the Real Property.

The Trustee relies on the Virginia Court of Appeal case, *Gaynor v. Hird*, 15 Va. App. 379, 424 S.E.2d 240 (1992), to support his argument.  This case, however, can be distinguished from the case at bar.  In *Gaynor*, the court held that one ex-spouse's use of the marital residence to the exclusion of the other ex-spouse subsequent to the entry of a divorce decree triggers Virginia Code section 8.01-31.  The court went on to find that "Ms. Gaynor is entitled to an accounting and to credit for the fair market rental value of her interest in the property." *Id.* at 383, 424 S.E.2d at 242.  The court found this was the case because "[b]y being charged her share of mortgage principal and interest, taxes, and insurance premiums, Ms. Gaynor has been obliged to bear the financial burden of owning the property.  It is only just that she should receive the corresponding benefit of that ownership." *Id.*  In the case before the Court, the Debtor has not been charged with paying any share of the mortgage, property taxes, and insurance premiums. The Debtor has not had to bear any of the financial burdens of owning the Real Property.  As such it is not just now that he should be entitled to assert the right to an accounting in equity and contribution.

---

[10]  The Court does not have any evidence before it regarding the amount Ms. Evans expended to maintain the Real Property.  Ms. Evans was not permitted to testify at trial because she was not listed as a witness.  Despite this evidentiary deficiency, the overarching fact that Ms. Evans maintained the Real Property without the assistance of Mr. Evans remains uncontroverted.

13

Ms. Evans is likewise not entitled to any contribution from the Debtor, as the Property

Settlement Agreement provides that Ms. Evans will remain in possession of the property so long

as she refinances the property and "pays all known charges relative to the ownership of the

property, including, but not limited to: all mortgages/deeds of trust, all real estate taxes, special

assessments, all items of maintenance of the property. . . ." Additionally, the agreement states

that Ms. Evans "expressly agrees to *save harmless* the Husband from any call of the

aforementioned expenses items associated with the ownership of the real property." As Ms.

Evans willingly agreed to undertake these expenses and hold Mr. Evans harmless, equity does

not allow her to recover contribution for these exact same ownership expenses at this time.[11]

The final issue is whether the Trustee meets the requirements of Bankruptcy Code

§ 363(h). This section allows a trustee to sell co-tenancy owned property for the benefit of

creditors pursuant to four conditions set forth in the section. Those are:

> (1) partition in kind of such property among the estate and such co-owners is
> impracticable;
> (2) sale of the estate's undivided interest in such property would realize
> significantly less for the estate than sale of such property free of the interests of
> such co-owners;
> (3) the benefit to the estate of a sale of such property free of the interests of co-
> owners outweighs the detriment, if any, to such co-owners; and
> (4) such property is not used in the production, transmission, or distribution, for
> sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h). Here, the Court finds that the Trustee has satisfied all four of these

conditions. The first element is satisfied in this case because the Real Property is a single family

dwelling on a 0.24-acre lot and partition of the land is not practicable. Second, sale of the

entirety of the Real Property would result in significantly greater benefit to the estate than sale of

only Mr. Evans' one-half interest. A sale would result in full payment of the Defendants' joint

---

[11] Ms. Evans did not file a counterclaim against the Trustee under Bankruptcy Rule 7013 asserting any such claim.
Ms. Evans has thereby waived any compulsory counterclaim she may have had.

secured debt on the Bank of America Note.  It would also provide significant funds for payment to the Debtor's unsecured creditors.  The fourth element is also satisfied, as the Real Property is residential in nature.

The third element—"whether the benefit to the estate of a sale of the property outweighs the detriment to the nondebtor spouse"—is satisfied as well.  *Price v. Harris (In re Price)*, 155 B.R. 948, 950 (Bankr. E.D. Va. 1993).  "The determination under 363(h)(3) is fact intensive, and courts generally have considered non-economic, emotional or psychological detriment in addition to any economic detriment that may be suffered by the co-owner."  *Id.* at 951 (citing cases from various jurisdictions).  Based on the evidence presented at trial, the Court finds the benefit to the estate of a sale of the entirety of the property outweighs the potential detriment to Ms. Evans.[12]  Ms. Evans has viable housing alternatives: she could use her share of the sale proceeds combined with the elimination of her approximately $540 per month mortgage payment to locate new housing or she could choose to refinance and purchase the interest of the bankruptcy estate in the property.  While Ms. Evans has had actual possession of the Real Property to the exclusion of Mr. Evans since June 1, 2011, the Court takes into consideration the fact that Ms. Evans is only now subjected to this sale as a result of her failure to refinance all obligations created by the Deed of Trust encumbering the property per the Property Settlement Agreement.  Additionally, "the fact that the property is the only source of funds to pay creditors, weighs in the trustee's favor."  *Id.*  Thus, weighing the benefit to the estate against the potential detriment to Ms. Evans, the Court finds that the Trustee meets all four conditions contained in § 363(h) and the Court will authorize him to sell the Real Property and satisfy the joint secured debt with the proceeds.

---

[12]  The Court uses the language "potential detriment to Ms. Evans" because it does not have any evidence concerning actual detriment to Ms. Evans.  Because Ms. Evans failed to file a witness list prior to trial, Ms. Evans was unable to testify as to how she might be harmed by a sale under § 363(h)(3).

15

In conclusion, the Court finds the Trustee holds a one-half ownership interest in the Real

Property, neither party is entitled to contribution from the other, and the Trustee is entitled to sell

the Real Property under Bankruptcy Code § 363(h).

A separate order shall issue.


ENTERED: __Mar 26 2015_____


                                  _____/s/ Kevin R. Huennekens_____
                                  UNITED STATES BANKRUPTCY JUDGE


Entered on Docket: 3/26/15

16